**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **CINDY SUE TYNER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 4:08CV1895MLM** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner of Social Security** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION**

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of

Michael J. Astrue ("Defendant") denying the application of Cindy Sue Tyner ("Plaintiff") for Social

Security benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et. seq.  Plaintiff filed

a Brief in Support of the Complaint.  Doc. 15.   Defendant filed an Amended Brief in Support of the

Answer.  Doc. 20.  The parties have consented to the jurisdiction of the undersigned United States

Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 8.

**I.**
**PROCEDURAL HISTORY**

On January 24, 2006, Plaintiff filed an applications for disability insurance benefits. Tr. 22.

Plaintiff's application was denied and she requested a hearing before an administrative law judge

("ALJ"). Tr. 79, 45-49.   On October 24, 2006, the ALJ found that Plaintiff was not disabled as

defined by the Act. Tr. 456-61.  On April 25, 2007, the Appeals Council remanded the matter to the

ALJ for further consideration. Tr. 18-21.  Upon remand, the ALJ held a supplemental hearing and,

on June 11, 2008, found that Plaintiff was not disabled at any time through the date of the decision.

Tr. 7-17.  On August 12, 2008, Plaintiff filed a request for review of the ALJ's June 2008 decision.

Tr. 370. On November 14, 2009, the Appeals Council denied Plaintiff's request for review. Tr. 3-5. Thus, the ALJ's June 2008 decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities … ." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. § § 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. § § 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her RFC. Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Afpel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. § §416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v.

Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).   In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535.  See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. Cox, 495 F.3d at 617; Guillams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine  whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).  See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted).  See also Eichelberger,  390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir.

2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d

707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence,

the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physicians;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v.

Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Residual functional capacity ("RFC") is defined as what the claimant can do despite his or her

limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental

impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot

perform his or her past relevant work can perform other work which exists in the national economy.

Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v.

Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove

that the claimant retains the residual functional capacity to perform other kinds of work. Goff, 421

F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence.

Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983). Second, once the plaintiff's capabilities are

established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert may be used. An ALJ posing a hypothetical to a vocational expert is not required to include all of a plaintiff's limitations, but only those which he finds credible. Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell, 892 F.2d at 750.

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm his decision as long as there is substantial evidence in favor of the Commissioner's position. Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because: (1) the ALJ failed to properly evaluate the opinion evidence from Rama Devi, M.D., and John D. Eckrich, M.D., who were Plaintiff's treating doctors; (2) the ALJ failed to properly evaluate the opinion of Paul Rexroat, Ph.D., and the opinion of Judith McGee, Ph. D, consistent with the mandate

of the Appeals Council; (3) the ALJ failed to consider a letter from Plaintiff's former employer[1]; and (4) the ALJ failed to ask the vocational expert if her answers were consistent with the dictionary of occupational titles.

## A.    Medical Evidence:

Plaintiff alleges disability commencing July 2, 2005, based on anxiety and depression, emphysema, chronic obstructive pulmonary disease ("COPD"), irritable bowel syndrome ("IBS"), and lumbar spine degenerative disc disease. Plaintiff argues that the ALJ rejected the opinions of Plaintiff's treating physicians, Dr. Devi and Dr. Eckrich without weighing their opinions pursuant to 20 C.F.R. §§ 404.1527 and 416.927 and SSR 96-2p. Plaintiff further argues that, upon stating that these doctors' opinions are inconsistent with their own findings, the ALJ did not provide specific examples of such inconsistencies. Plaintiff also contends that the ALJ failed to evaluate the reports and opinion of consulting psychologists, Paul W. Rexroat, Ph.D., and Janet McGee, Ph.D., as directed by the Appeals Council.

Upon finding that Plaintiff is not disabled, the ALJ considered medical evidence of record.[2] In regard to Plaintiff's complaints of back pain, the court notes that on September 27, 2006, Plaintiff

---

[1]    Plaintiff contends that the ALJ did not consider a letter from her former employer which letter states that Plaintiff is unable to perform her job as a nursing supervisor. While the ALJ did not specifically address this letter, the ALJ did consider that Plaintiff testified that she was laid off from her job as a supervisor in a nursing home because she could no longer perform nursing duties due to her medical problems. Tr. 14, 16. The ALJ further considered that Plaintiff collected unemployment benefits after she stopped working at the nursing home which indicates that she believed she was capable of working. "A claimant may admit an ability to work by applying for unemployment compensation benefits because such an applicant must hold himself out as available, willing and able to work." Jernigan v. Sullivan, 948 F.2d 1070, 1074 (8th Cir. 1991).

[2]    In her June 2008 decision, the ALJ incorporated by reference her consideration of the medical evidence in her first decision. Upon addressing the ALJ's consideration of the medical evidence, the court will not distinguish between the ALJ's first and second opinions unless such a distinction is relevant.

presented to Ken Gibson, M.D., complaining of low back pain and that Dr. Gibson reported that Plaintiff had some parpspinous muscle tenderness and pain on straight-leg raise; that Plaintiff's reflexes were normal; that Plaintiff was negative for sensory deficit; and that Dr. Gibson assessed low back pain and prescribed Valium and Vicodin. Tr. 268.

Plaintiff also saw Douglas Parashak, M.D., for low back pain on October 2, 2006, at which time Dr. Parashak prescribed physical therapy. Tr. 243. On October 13, 2006, Plaintiff saw Dr. Devi, and complained of low back pain. At this time Dr. Devi reported that Plaintiff had normal muscle strength and tone; that she had normal sensation; that she had no edema in her extremities. Tr. 241-42. Plaintiff saw Dr. Devi again on January 18, 2007, with continued complaints of low back pain. Dr. Devi reported on this date that Plaintiff's recent MRI was "completely normal barring some minor degenerative changes at the L3-L4 level"; that it was "difficult to account all her symptoms based on this"; that there was no surgical treatment for Plaintiff's condition; that Plaintiff's treatment should include stretching, strengthening, exercise, and anti-inflammatory medication; and that Dr. Devi was discharging Plaintiff from his care. Tr. 264.

The ALJ considered records from Ravi V. Shitut, M.D., and that Dr. Shitut reported that Plaintiff was seen on January 18, 2007, at which time it was noted that an MRI was "completely normal with the exception of some minor degenerative changes of the L3-4 disc space" and that Plaintiff's symptoms could not be explained by the MRI findings. Tr. 13. The court notes that Dr. Shitut reported on October 24, 2006, that Plaintiff had normal gait, normal range of motion without pain; that lumbar x-rays showed mild degenerative changes at L5-S1, "but they are generally reasonably normal for a lady of her age"; and that Plaintiff's diagnosis was "acute spasmodic low back pain with underlying degenerative disc disease of the lumbar spine." Tr. 259-60.

Dr. Devi reported on May 22, 2007, that Plaintiff had some decreased range of motion. Tr. 240. On October 19, 2007, Dr. Devi completed a Physical Residual Functional Capacity Questionnaire in which he stated that, according to Plaintiff, during a normal work-day her pain or other symptoms would frequently interfere with her attention and concentration; that Plaintiff was capable of low stress jobs; that she can sit ten minutes at time before having to get up; that she could stand five minutes at a time before having to sit down; and that she could occasionally lift less than ten pounds. Tr. 201-203. Also, in regard to her back pain, Plaintiff presented to Chad Shelton, M.D., on October 30, 2007, pursuant to a referral from Dr. Devi. Dr. Shelton's diagnosed Plaintiff with right-sided lumbar fact arthropathy, possible lumbar degenerative disc disease, and possible right-sided sacroilliac joint pain and recommended facet injections. Tr. 185-88.

In regard to Plaintiff's complaint of COPD, the ALJ considered that July 2004 pulmonary function testing showed that Plaintiff had a mild obstruction and that chest x-rays revealed evidence of COPD, "but there was no evidence of cardiopulmonary process." The court notes that Plaintiff was seen by Dr. Devi on May 22, 2007, at which time Dr. Devi diagnosed Plaintiff with COPD/emphysema. Also on this date Dr. Devi found no abnormalities in regard to Plaintiff's respiratory effort, percussion of the chest, and palpation of the chest, no abnormalities of the abdomen, and a reduction in Plaintiff's range of motion. Tr. 239-40. The ALJ considered X-ray views of Plaintiff's chest from this same date which showed, according to William Mehard, M.D., that Plaintiff's lungs were "clear and well expanded without change" since February 8, 2005. Tr. 12, 216, 249. The ALJ considered pulmonary function testing of May 22, 2007, which showed "mild obstruction," both pre and post medication. Tr. 12, 217, 250. The ALJ considered that of February 2008 notes from Midwest Medical Center, with which Dr. Devi is affiliated, reflect that Plaintiff's

diagnosis included COPD and that "a chest x-ray showed hyperinflation which may reflect" COPD. Tr. 458.

In regard to Plaintiff's allegation of irritable bowel syndrome ("IBS"), the ALJ considered that February 8, 2005 records from Southwest Medical Center reflect that Plaintiff's diagnosis included loss of weight and that February 11, 2005 records reflect that Plaintiff complained of abdominal pain; that Plaintiff had stopped taking her IBS medication; that examination revealed normal bowel sounds and generalized diffuse tenderness; and that a colonoscopy was to be scheduled. The ALJ also considered that February 14, 2005 records from St. Anthony's Medical Center, with which Dr. Eckrich is affiliated, reflect that Plaintiff was treated for constipation; that a February 16, 2005 colonoscopy was entirely normal; and that it was recommended that Plaintiff follow a high fiber diet. Tr. 458. ALJ considered that Dr. Eckrich reported on May 16, 2007, that Plaintiff's impairment was neuromotor dysfunction and that she does not have colonoscopic or x-ray abnormalities. Tr. 13. Dr. Eckrich completed an IBS RFC Questionnaire on May 30, 2007, in which he stated that Plaintiff had "chronic diarrhea," abdominal pain and cramping, nausea, loss of appetite, abdominal distention, fatigue and opined that in a typical work-day Plaintiff's pain or other symptoms are severe enough to frequently interfere with her attention and concentration; that Plaintiff is incapable of "even 'low stress' jobs"; that Plaintiff can sit fifteen minutes at one time; that Plaintiff can stand twenty minutes at one time; that due to Plaintiff's need to take unscheduled breaks she will need to be away from her work station for an average of unscheduled restroom breaks "20 + minutes"; that she will have to lie down or rest at unpredictable intervals; that she can rarely twist, stoop, crouch, and climb ladders; that she can occasionally climb stairs; and that she will be absent from work more than four days a month. Tr. 209.

As stated above, Dr. Devi and Dr. Eckrich were Plaintiff's treating doctors. The opinions and findings of a plaintiff's treating physician are entitled to "controlling weight" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir. 2000) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)). Indeed, if they are not controverted by substantial medical or other evidence, they are binding. Cunningham v. Apfel, 222 F.3d 496, 502 (8th Cir. 2000) (citing Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir.1991); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir.1998)). However, while the opinion of the treating physician should be given great weight, this is true only if the treating physician's opinion is based on sufficient medical data. Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate need to evaluate record as whole and upholding the ALJ's decision to discount the treating physician's medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation); Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (citing Matthews v. Bowen, 879 F.2d 422, 424 (8thCir.1989) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data); 20 C.F.R. § 404.1527(d)(3) (providing that more weight will be given to opinion when a medical source presents relevant evidence, such as medical signs, in support of his or her opinion). See also Hacker v. Barnhart, 459 F.3d 934, 9937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment); Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (holding that a treating physician's opinion is giving controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence"). "Although a treating physician's opinion

is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001).

A treating physician's checkmarks on a form, however, are conclusory opinions which can be discounted if contradicted by other objective medical evidence. Stormo v. Barnhart, 377 F.3d 801, 805-06 (8th Cir. 2004); Hogan 239 F.3d at 961; Social Security Ruling 96-2p, (July 2, 1996). Where diagnoses of treating doctors are not supported by medically acceptable clinical and laboratory diagnostic techniques, the court need not accord such diagnoses great weight. Veal v. Bowen, 833 F.2d 693, 699 (7th Cir. 1987). An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that an ALJ may give a treating doctor's opinion limited weight if it is inconsistent with the record). "Medical reports of a treating physician are ordinarily entitled to greater weight than the opinion of a consulting physician." Chamberlin, 47 F.3d at 1494 (citing Matthews, 879 F.2d at 424). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as whole." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001).

A treating physician's opinion that a claimant is not able to return to work "involves an issue reserved for the Commissioner and therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." Ellis v. Barnhart, 392 F.3d 988, 994 (8th Cir. 2005). Moreover, a brief, conclusory statement from a treating physician stating that the applicant is disabled is not binding on the Secretary. Ward v. Heckler, 786 F.2d 844, 846 (8th Cir.1986) (per curiam) ("Even statements made by a claimant's treating physician regarding the existence of a disability have

been held to be properly discounted in favor of the contrary medical opinion of a consulting physician where the treating physician's statements were conclusory in nature."). <u>See</u> <u>also</u> <u>Hacker v. Barnhart</u>, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight should not be given to the RFC assessment); <u>Chamberlain</u>, 47 F.3d at 1494; <u>Barrett v. Shalala</u>, 38 F.3d 1019, 1023 (8th Cir.1994) (citing <u>Thomas v. Sullivan</u>, 928 F.2d 255, 259 (8th Cir.1991)); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984) (holding that the ALJ is not bound by conclusory statements of total disability by a treating physician where the ALJ has identified good reason for not accepting the treating physician's opinion, such as its not being supported by any detailed, clinical, diagnostic evidence).

Additionally, Social Security Regulation ("SSR") 96-2p states, in its "Explanation of Terms," that it "is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." 1996 WL 374188, *2 (S.S.A. July 2, 1996). SSR 96-2p clarifies that 20 C.F.R. § § 404.1527 and 416.927 require that the ALJ provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)." <u>Id.</u> at *5.

When considering the weight to be given the opinion of a treating doctor, the entire record must be evaluated as a whole. <u>Wilson v. Apfel</u>, 172 F.3d 539, 542 (8th Cir. 1999) (quoting <u>Cruze v. Chater</u>, 85 F.3d 1320, 1324-25 (8th Cir. 1996) ("Although a treating physician's opinion is generally entitled to substantial weight, such opinion does not automatically control, since the record must be evaluated as a whole."). "'It is the ALJ's function to resolve conflicts among the various treating and examining physicians.'" <u>Tindell v. Barnhart</u>, 444 F.3d 1002, 1004 (8th Cir.2006) (quoting <u>Vandenboom v. Barnhart</u>, 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted).

13

An ALJ, however, may discount or disregard the opinion of a treating doctor if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. Prosch, 201 F.3d at 1012-13. A treating physician's opinion is due "controlling weight" if that opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Id. at 1012-13 (quoting 20 C.F.R. § 404.1527(d)(2) 2000). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as whole." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir.2001).

The ALJ considered the reports and records of Dr. Devi and Dr. Eckrich, as set forth above. The ALJ discredited Dr. Devi's conclusions in the October 2007 Physical RFC Questionnaire that, among other things, Plaintiff can lift less than ten pounds occasionally and can sit no more than ten minutes and stand no more than five minutes. The ALJ also discredited Dr. Eckrich's opinion as reported in the May 2007 IBS Questionnaire that, among other things, Plaintiff is incapable of even low stress jobs because of chronic diarrhea, abdominal pain, and other symptoms; that she will be away from her work station for restroom breaks more than twenty minutes during an eight-hour workday; and that she will be absent from work more than four days a month. First, the court notes that the ALJ was not required to give controlling weight to Dr. Devi's and Dr. Eckrich's check marks on the Questionnaires. See Stormo, 377 F.3d at 805; Hogan, 239 F.3d at 961. Moreover, to the extent these doctors opined that Plaintiff is unable to work, such an opinion is not controlling. See Ellis, 392 F.3d at 994; King, 742 F.2d at 973.

Upon discrediting the opinions of Dr. Devi and Dr. Eckrich, the ALJ considered that the limitations placed on Plaintiff by these doctors were less than the limitations Plaintiff placed upon herself. Additionally, the ALJ found that the limitations imposed by Dr. Devi and Dr. Eckrich were

inconsistent with these doctors' respective findings. The court finds that the ALJ gave good reasons for not giving controlling weight to Dr. Devi's opinion as stated in the October 2007 Questionnaire and to Dr. Eckrich's opinion as stated in the May 2007 Questionnaire. See SSR 96-2 at *5. Additionally, upon discrediting these doctors' conclusions, the ALJ evaluated the record as a whole. See Hogan, 239 F.3d at 961; Wilson, 172 F.3d at 542. The court further finds that the ALJ gave proper weight to the opinions of Dr. Devi and Dr. Eckrich and that her decision is supported by substantial evidence in this regard. To the extent that the ALJ made some inconsistent statements in her decision in regard to Plaintiff's alleged physical impairments, such a deficiency does not require reversal or remand where the ALJ's decision is supported by substantial evidence. See Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996) ("Although specific delineations of credibility findings are preferable, an ALJ's arguable deficiency in opinion-writing technique does not require us to set aside a finding that is supported by substantial evidence.") (citing Carlson v. Chater, 74 F.3d 869 (8th Cir. 1996)).

In regard to Plaintiff's allegation of a anxiety attacks, in her first opinion the ALJ considered that Plaintiff saw Paul W. Rexroat, Ph. D., for a consultive psychological examination and that Dr. Rexroat diagnosed Plaintiff with depression; that Dr. Rexroat found that Plaintiff had some moderate limitations in adapting to her environment; that Plaintiff "herself testified [ ] that she believed her mental status contributed to only 5% of her overall disabling condition; and that Plaintiff's minor symptoms are not disabling. The ALJ also considered that Plaintiff told Dr. Rexroat that she stopped taking Prozac because she was feeling better; that she was depressed due to a friend's recent suicide and her financial situation; that she fed the dog, made sandwiches, heated things in the microwave, went to the casino, spent time watching television or coloring art posters, liked to do crafts, and read newspapers. The ALJ further considered that Dr. Rexroat estimated that Plaintiff's IQ was between

75 and 85; that Plaintiff appeared to be functioning in the borderline to low average of intelligence; that Plaintiff was able to understand and remember simple instructions, sustain concentration and persistence with simple tasks, and interact socially; that Plaintiff had moderate limitations in her ability to adapt to her environment; that Plaintiff exhibited good social skills; that Dr. Rexroat's diagnosis was "major depression recurrent moderate"; that Plaintiff's global assessment functioning ("GAF") was 59 [3]; and that Plaintiff's GAF indicated moderate symptoms. Tr. 459. In regard to Plaintiff's mental status, the ALJ also considered that Plaintiff had not sought treatment from a mental health professional. Indeed, the failure to seek aggressive treatment is not suggestive of a disability. See Rautio, 862 F. 2d at 179. Moreover, seeking limited medical treatment is inconsistent with claims of disabling pain. Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989). The ALJ further considered that when Plaintiff was evaluated at a pain clinic, she "was found not to be exhibiting any signs of undue depression." Tr. 15. The ALJ also considered that Plaintiff testified that she began seeing "a Dr. Lamb in May 2006" for depression. Tr. 457.

The court also notes that Dr. Rexroat stated in his March 29, 2006 report that Plaintiff was alert and oriented; that her speech was normal; that she could solve simple mathematical problems; that "her immediate memory, as measured by digit span, was 7/7 forward and 4/4 backward"; that her delayed memory, "as measured by asking her to identify 3 objects in the office after a 5 minute

---

[3]       Global assessment of functioning ("GAF") is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. Id. at 32.

time period, was 3/3"; that she was negative for any loosening of association suggestive of a thought disorder; and that Plaintiff was able to identify the current president and past presidents and identify four large cities in the United States. Tr. 301-303. Additionally, Dr. Devi reported on October 13, 2006, and May 22, 2007, that Plaintiff was oriented to time, place and person. Tr. 240, 242.

On April 13, 2006, Janet McGee, Ph.D., completed a Psychiatric Review Technique Form, after she reviewed Plaintiff's medical records. Tr. 138-52. Dr. McGee opined that Plaintiff had mild limitations in regard to restrictions of activities of daily living and maintaining social functioning; that Plaintiff had moderate limitations in maintaining concentration, persistence and pace; and that Plaintiff had no episodes of decompensation. Tr. 149. Dr. McGee further opined that although Plaintiff has moderate limitations in maintaining concentration, persistence and pace as well as some difficulty adapting, she "is still able to perform simple work." Tr. 151.

On July 19, 2006, Plaintiff was seen by Ottavio Vitolo, M.D. Dr. Vittolo completed an Outpatient Psychiatry Intake Assessment which states that Plaintiff said her "chief complaint" was that she had "been depressed lately" and that she had new "onset depressive symptoms." Dr. Vittolo reported on this date that mental status examination showed that Plaintiff was well groomed; that she was calm; that she did "not appear to have psychomotor agitation or retardation"; that she had "intact associations"; that she had no delusions; that her affect was stable; that her judgment and insight were good; that Dr. Vitolo's impression was that Plaintiff had "new onset depressive symptoms, in the context of chronic stressors for longer than six months; that the diagnosis was that Plaintiff had "adjustment disorder chronic with depressed mood"; that Plaintiff had been treated by her primary doctor for the anxiety component of her symptoms and had responded well to medications; that Plaintiff's insomnia was improved with medication; that Plaintiff should continue with the same

medications, "which she appear[ed] to tolerate well"; and that Plaintiff had the "necessary assets for improvement." Tr. 281-82.

The court first notes that neither Dr. Rexroat nor Dr. McGee were Plaintiff's treating doctors. Dr. Rexroat saw Plaintiff only once, on a consulting basis, and Dr. McGee never examined Plaintiff. See Van Horn v. Heckler, 717 F.2d 1196, (8th Cir. 1983) ("This Court generally gives little weight to opinions by a medical review panel which are not based upon personal examination of the claimant."); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992); Turpin v. Bowen, 813 F.2d 165, 170 (8th Cir. 1987) ("T]he report of a consulting physician who examine[s a] claimant once does not constitute 'substantial evidence' upon the record as a whole"); Piercy v. Bowen, 835 F.2d 190, 191 (8th Cir. 1987). Moreover, Dr. Rexroat did not perform testing to determine Plaintiff's IQ and acknowledged that the IQ he attributed to Plaintiff was an estimate. Veal v. Bowen, 833 F.2d 693, 699 (7th Cir. 1987) (holding that where diagnoses of doctors are not supported by medically acceptable clinical and laboratory diagnostic techniques, the court need not accord such diagnoses great weight). A disabling impairment must be established by acceptable clinical or laboratory diagnostic techniques. See 20 C.F.R. § § 404.1527(a)(1), 416.927(a)(1). In any case, Plaintiff did not allege that she was disabled due to borderline intellectual functioning. As such, the ALJ was under no obligation to investigate such a claim. See Brockman v. Sullivan, 987 F.2d 1344, 1348 (8th Cir. 1993) (holding that an ALJ is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability).

In regard to Dr. Rexroat, it is well settled that the report of a consulting physician who has seen the claimant only once is of little significance by itself. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992). See also Turpin v. Bowen, 813 F.2d 165, 170 (8th Cir. 1987) ("T]he report of a consulting physician who examine[s a] claimant once does not constitute 'substantial evidence' upon

the record as a whole"); Piercy v. Bowen, 835 F.2d 190, 191 (8th Cir. 1987). In regard to Plaintiff's contention that the ALJ did not consider Dr. Rexroat's opinion and report, the court notes that the ALJ did discuss Dr. Rexroat's records in detail. To the extent that the ALJ did not address every specific finding of Dr. Rexroat, an ALJ is not required to cite every piece of evidence in a lengthy record. To the extent that the ALJ did not discuss Dr. Rexroat's report in detail, failure to cite specific evidence does not establish that such evidence was not considered. See Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995); Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006) ("The fact that the ALJ did not elaborate on this conclusion does not require reversal, because the record supports her overall conclusion."); Wheeler v. Apfel, 224 F.3d 891, 896 n.3 (8th Cir. 2000) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) (holding that an ALJ is not required to discuss every piece of evidence submitted and that an "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered").

In her second opinion, the ALJ also considered that, although Dr. Rexroat reported that Plaintiff had moderate limitations in adapting to her environment, Plaintiff testified at the hearing that she believed that her mental status contributed to only five percent of her overall disabling condition. The ALJ further considered that when Plaintiff was evaluated at a pain clinic, she was found not to have signs of undue depression or anxiety.

The court notes that Dr. Rexroat reported that Plaintiff has a GAF of 59, which represents only *moderate* limitations and that Plaintiff could understand and remember simple instructions and sustain concentration, persistence and pace. Additionally, Dr. Shelton reported in October 2007 that Plaintiff's affect was appropriate and that she was negative for signs of depression, anxiety, or agitation. In October 2006 and May 2007, Dr. Devi reported that Plaintiff was oriented to time, place, and person. Further, Plaintiff testified at the hearing that "right now most of [her] problems

[are] the physical not the mental." Tr. 398. The court finds that the ALJ considered the opinion of Dr. Rexroat and that the ALJ's opinion in this regard is supported by substantial evidence on the record as a whole.

Indeed, the ALJ did not mention in her decision the Psychiatric Review Technique Form completed by Dr. McGee. As stated above, this failure does not mean it was not considered. See Montgomery, 69 F.3d at 275; Karlix, 457 F.3d at 746. Moreover, Dr. McGee did not examine Plaintiff but rather reviewed Plaintiff's records. Dr. McGee's opinion, therefore, is not afforded controlling weight although it may assist the ALJ in reaching a determination. See Jenkins v. Apfel, 196 F.3d 922, 925 (8th Cir.1999). In any case, although Dr. McGee reported that Plaintiff can perform only simple work, Dr. McGee found that Plaintiff had only mild or moderate limitations in the areas evaluated. Thus, Dr. McGee's report is not inconsistent with a finding that Plaintiff is not disabled. While the ALJ did not mention Dr. McGee's findings, the court finds that, if considered, Dr. McGee's findings would not affect the outcome of this matter. See Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996). Therefore, the failure of the ALJ to address the Dr. McGee's findings does not require reversal.

Based on the foregoing considerations, the court finds that the ALJ's consideration of the medical evidence of record is consistent with the Regulations and case law and that it is supported by substantial evidence on the record as a whole.

## B.    Hypothetical to the Vocational Expert:

Plaintiff contends that because Dr. Rexroat and Dr. McGee found that Plaintiff is limited to simple tasks, the ALJ should have posed a hypothetical to the VE which included this limitation. The court notes, however, that Plaintiff did not allege that she is disabled due to low IQ or low

intelligence or comprehension. Rather, in addition to physical conditions, Plaintiff alleged that she is disabled "due to anxiety attacks" and a low "stress level." Tr. 125.

The ALJ did find at Step 2 of the sequential analysis that Plaintiff has severe depression, chronic pulmonary disease, IBS, and degenerative disc disease. Tr. 12. In regard to Plaintiff's allegation of physical impairments, while the ALJ found that these impairments are severe, after considering the medical records and Plaintiff's testimony, the ALJ discredited Plaintiff's allegations as to the intensity, persistence and limiting effects of the symptoms from these conditions. Tr. 15.

The ALJ then found that Plaintiff has the following RFC:

> The claimant has the residual functional capacity to perform light work[4] as defined in 20 C.F.R. § 404.1567(b) except that the claimant is limited to performing jobs with an SVP of 3[5] or less and she must avoid working in environments where she has concentrated exposure to pollutants and temperature extremes.

Tr. 14.

Upon questioning by the ALJ, the VE testified that Plaintiff's former work as a nurse assistant is classified as semi-skilled medium work with an SVP of 4. The VE further testified that Plaintiff has no transferrable skills. The hypothetical posed to the VE by the ALJ was as follows:

> [Plaintiff] is functionally limited to light exertional work. In addition, [Plaintiff] needs to avoid environment pollutants or temperature extremes. She's limited to an SVP of no more than three. And with that can [Plaintiff] perform any of her past relevant work as it is actually performed or as it is customarily performed in the national economy?

---

[4]    The Regulations define light work as 'involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 404.1567(b). Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251,*6 (SSA).

[5]    A position with an "SVP of 2" is an unskilled position. A position with an SVP of 3 requires more skill than a position with an SVP of 2. Jones ex rel Morris v. Barnhart, 315 F.3d 974, 979 (8th Cir. 2003).

Tr. 410.

The VE testified that with such an RFC Plaintiff could not perform her past work. Tr. 410. The VE further testified that there are jobs in substantial numbers in the national and regional economy which a person with Plaintiff's RFC can perform; that these jobs included order clerk, telephone quotation clerk, and surveillance system monitor; that these jobs are sedentary; and, additionally, there are 137 sedentary, unskilled jobs and 1711 sedentary and light unskilled jobs; that light exertional jobs with an SVP of 3 which Plaintiff can perform exist in substantial numbers in the national and regional economy; and that such jobs include cashier II and electronics worker.

An ALJ posing a hypothetical to a VE is not required to include all of a claimant's limitations, but only those which he finds credible. Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("In posing hypothetical questions to a vocational expert, an ALJ must include all impairments he finds supported by the administrative record."); Sobania v. Sec'y of Health Educ. & Human Servs., 879 F.2d 441, 445 (8th Cir. 1989); Rautio v. Bowen, 862 F.2d 176, 180 (8th Cir. 1988). The hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999) (holding that the ALJ need not include additional complaints in the hypothetical not supported by substantial evidence); Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Sobana, 879 F.2d at 445; Roberts v. Heckler, 783 F.2d 110, 112 (8th Cir. 1985). Where a hypothetical question precisely sets forth all of the claimant's physical and mental impairments, a vocational expert's testimony constitutes substantial evidence supporting the ALJ's decision. Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990).

Even though a VE does not specifically recite factors in his answers, an ALJ can properly assume that the vocational expert "framed his answers based on the factors the ALJ told him to take into account." Whitehouse v. Sullivan, 949 F.2d 1005, 1006 (8th Cir. 1991). Where an ALJ's hypotheticals included all of a claimant's impairments as supported by the record, and the expert limited his opinion in this regard, an ALJ properly relies on the vocational expert's testimony. Jones v. Chater, 72 F.3d 81, 82 (8th Cir. 1995).

The Eighth Circuit further holds as follows:

> "Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." Tucker v. Barnhart, 363 F.3d 781, 784 (8th Cir.2004) (citing Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir.1996)). The hypothetical question must include all the claimant's impairments supported by substantial evidence in the record as a whole. Id. (citing Pickney v. Chater, 96 F.3d 294, 296 (8th Cir.1996)). However, the hypothetical question need only include those impairments which the ALJ accepts as true. Rappoport v. Sullivan, 942 F.2d 1320, 1323 (8th Cir.1991).

Grissom v. Barnhart, 416 F.3d 834, 836 (8th Cir. 2005).

Where a vocational expert, in response to a hypothetical which captures the concrete consequences of a claimant's deficiencies, responds that there are readily available jobs in which the claimant can engage, the Commissioner has met his burden to demonstrate the claimant's ability to work in the economy. Cox v. Astrue, 495 F.3d 614, 621 (8th Cir. 2007) (citing Reed v. Sullivan, 988 F.2d 812, 815-16 (8th Cir. 1993)).

The ALJ in the matter under consideration found that Plaintiff has a severe mental impairment although she did not specify what the severe mental impairment is. Tr. 12. On the other hand, in the subsequent analysis, the ALJ discredited Plaintiff's complaints of anxiety and depression. Tr. 13-14. Thus, the court finds that the ALJ's decision is ambiguous in regard to Plaintiff's alleged mental impairments. Further, in the hypothetical posed to the VE, the ALJ did not include any mental limitations. Under such circumstances it cannot be said that the decision of the ALJ is supported by

substantial evidence. See King v. Astrue, 564 F.3d 978 (8th Cir. 2009) (holding that *when an ALJ finds that a claimant has a  severe mental impairment and cannot return to her past relevant work, an ALJ must include limitations from Plaintiff's mental impairment in a hypothetical to a VE*).  The court will, therefore, reverse and remand this matter.  Upon remand the ALJ should clarify whether or not Plaintiff has a severe mental impairment. The ALJ should also clarify, what, if any mental impairments Plaintiff has.   If the ALJ finds that Plaintiff has a severe mental impairment, the ALJ should include this impairment in a hypothetical to a VE. See id.  If the ALJ finds that Plaintiff does not have a severe mental impairment, to the extent that the hypothetical previously posed to the VE is not artfully worded, the ALJ should submit an appropriate hypothetical to the VE which encompasses all of Plaintiff's exertional and non-exertional limitations.  The court stresses that upon reversing and remanding this matter, it does not imply that the ALJ should return a finding of "disabled."  The court is merely concerned that the ALJ's final determination, as it presently stands, is not supported by substantial evidence on the record as a whole, particularly in regard to the ambiguity in the ALJ's decision regarding Plaintiff's alleged mental impairments.

## IV.
## CONCLUSION

The court finds that this matter should be reversed and remanded to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. 405(g), sentence 4. Upon remand, the ALJ should  fully develop the record in a manner consistent with this court's opinion.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that this matter is reversed and remanded;

**IT IS ORDERED** that a Judgment of Reversal and Remand shall issue remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. 405(g), sentence 4.

**IT IS FURTHER ORDERED** that upon entry of the Judgment, the appeal period will begin which determines the thirty (30) day period in which a timely application for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, may be filed.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of July, 2009.